ORIGINAL

SEALED
BY ORDER OF THE COURT

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 07 2012

at ____ o'clock and ____ min. ____ M
SUE BEITIA, CLERK

FLORENCE T. NAKAKUNI #2286
United States Attorney
District of Hawaii

LESLIE E. OSBORNE, JR. #3740
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii 96850
Telephone: (808) 541-9218
Fax: (808) 541-2958
E-Mail: Les.Osborne@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. CR12-01133 LEK |
| | ) | |
| Plaintiff, | ) | INDICTMENT |
| | ) | |
| vs. | ) | 18 U.S.C. § 1343 [Wire Fraud], |
| | ) | §§ 2314 and (2)(b) [Interstate |
| MARC HUBBARD and | ) | Transportation of Stolen |
| SEAN BARRIERO, | ) | Property; Aiding and Abetting] |
| | ) | |
| Defendants. | ) | |

INDICTMENT

COUNT 1

The Grand Jury charges:

I. Introduction

At all times relevant to this Indictment:

1. MARC HUBBARD (hereinafter "HUBBARD"), at all times relevant to this Indictment, was a resident of North Carolina and was involved in the live concert business using the company names "Castle Entertainment" and "Jabez Consolidated Holdings." Hubbard maintained a business bank account at Bank of America in North Carolina.

2. SEAN BARRIERO, not indicted in Count 1 (hereinafter "BARRIERO"), at all times relevant to this Indictment, was a British subject and resident of Miami, Florida who aspired to be in the live concert industry through a company he established called "Epic Talent." BARRIERO maintained a business bank account at Bank of America in Florida.

3. "H.W." (not indicted here), at all times relevant to this Indictment, were the initials of a British subject who resides in Mallorca, Spain. H.W. aspired to be in the live concert industry through a company she established called "Elite Artists Live."

4. "R.P." (not indicted here), at all times relevant to this Indictment, were the initials of a concert promoter on Oahu, Hawaii who operated a business called "B.P.E. Productions."

5. The University of Hawaii (hereinafter "UH"), at all times relevant to this Indictment, was a state university based in Honolulu. UH maintained a bank account at Bank of Hawaii in Honolulu.

## II. Definition

6. <u>Escrow Account</u>. At all times relevant to this Indictment, the term "escrow account" was used to describe accounts at financial institutions used to hold and preserve an artist's performance fee until the money is released after the contracted performance.

## III. The Scheme to Defraud

7. From in or about April 2012 and continuing through in or about July 2012, in the District of Hawaii and elsewhere, the Defendant HUBBARD, along with BARRIERO, not charged in this count, and others known and unknown to the Grand Jury and not charged in this Indictment, knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money from others, by means of materially false and fraudulent pretenses and representations, promises, and omissions as well as omissions of material facts, well knowing at the time that such pretenses, representations, promises and omissions would be and were false when made.

## IV. Manner and Means of the Scheme to Defraud

8. In or about March 2012, UH was approached by R.P. about bringing Stevie Wonder to UH for a concert benefitting the UH Athletic Department at UH's Stan Sheriff Center. The concert was originally scheduled for August 11, 2012 and was later changed to August 18, 2012. As part of the deal, R.P. told UH that Stevie Wonder

would do the show at a discounted rate of $450,000 because it was a fundraiser.

9. Meanwhile, R.P. was in contact with H.W. who assured R.P. that she could book Stevie Wonder for $450,000 with the assistance of BARRIERO who had a business relationship with Defendant HUBBARD.

10. Throughout this process, R.P. maintained contact with UH and was getting information from H.W. H.W. served as the liaison between R.P. and BARRIERO. BARRIERO had a business relationship with Defendant HUBBARD and communicated HUBBARD's updates to H.W. Defendant HUBBARD, in turn, told BARRIERO that he had relationships inside Stevie Wonder's management/inner circle to book the UH concert.

11. Defendant HUBBARD convinced BARRIERO (and thus H.W. and R.P.) that Defendant HUBBARD was dealing with a close associate of Stevie Wonder who had approved the dates for the UH Stevie Wonder concert.

12. On May 29, 2012 a Hawaii investor with no official UH affiliation, wire transferred $50,000 from Hawaii to the Bank of America account controlled by BARRIERO in Florida. This money was intended to be a "binder" to secure Stevie Wonder for the August 2012 UH concert. The Hawaii investor was promised a 25% return on his investment to be paid by R.P. after the concert.

4

13. Upon receipt of the $50,000 binder payment, BARRIERO disbursed the money as follows: $27,500 was wired to Defendant HUBBARD, ostensibly for Stevie Wonder; $8,750 was wired to H.W. in Europe; and $13,750 was kept and later spent by BARRIERO on personal expenses.

14. On June 12, 2012, UH executed a contract with R.P.'s company for the Stevie Wonder concert on August 18, 2012. Around that time, R.P. executed a contract with H.W. and BARRIERO as "booking agents" for Stevie Wonder.

15. On June 19, 2012, R.P. emailed a document to U.H. created by BARRIERO. The document was on Epic Talent letterhead with the title "EPIC TALENT ESCROW TRUSTEE INFORMATION" and contained instructions for sending a wire transfer to BARRIERO's Bank of America account.

16. On June 26, 2012 at the direction of R.P. and using the "Escrow Trustee Information" provided by BARRIERO, UH wire transferred $200,000 from an account at Bank of Hawaii to the Bank of America account controlled by BARRIERO in Florida. This money represented the partial Stevie Wonder artist fee for the UH concert.

17. Upon receipt of the $200,000 "trust deposit," BARRIERO disbursed the money from his Florida account as follows: $120,000 was wired to Defendant HUBBARD, ostensibly for Stevie

Wonder; $11,250 was wired to H.W. in Europe; and $68,750 was kept and later spent by BARRIERO on personal expenses.

18. Upon receipt of the $120,000 of UH's money from BARRIERO, Defendant HUBBARD spent all of the money on personal and business expenses. None of the money went to Stevie Wonder or any entity actually representing Stevie Wonder.

19. On ~~June~~ July 6, 2012, tickets were offered on sale to the public for the UH Stevie Wonder concert.

20. On July 9, 2012, Stevie Wonder's authorized agent contacted UH to inform UH that Stevie Wonder and his management had no knowledge of the UH concert.

21. On July 16, 2012, BARRIERO had a phone call with a UH official that was secretly recorded by the FBI with the UH official's consent. During the recorded phone call, BARRIERO assured the UH official that the UH's $200,000 deposit had been sent to Stevie Wonder's management and that BARRIERO had not taken his fee.

22. During the July 16, 2012 call, at Defendant HUBBARD's direction, BARRIERO refused to disclose the name of the individual in Stevie Wonder's management who had ultimately received the UH's money.

IV. The Misrepresentations

23. The materially false statements, representations, promises and omissions used to carry out the scheme to defraud are set out below:

a. Defendant HUBBARD falsely stated that he had connections inside the management/inner circle of Stevie Wonder and that the artist was available for an August 2012 concert at UH when, in fact, Defendant HUBBARD had no such connections and was never in a position to secure Stevie Wonder for the UH concert.

b. BARRIERO falsely represented that his account at Bank of America was an "Escrow Trustee" account when, in fact, the bank account was not a trust account and was routinely used by BARRIERO to pay personal and business expenses.

c. Defendant HUBBARD and BARRIERO intentionally failed to disclose to a UH representative that they intended to spend some of the $200,000 artist fee from UH on their personal and business expenses.

d. At Defendant HUBBARD's direction, BARRIERO falsely told a UH representative that the UH's $200,000 had been sent to Stevie Wonder's management.

e. On July 16, 2012, BARRIERO falsely stated to a UH representative that he personally did not take any fees from UH's

$200,000 when, in fact, BARRIERO had kept, spent, or otherwise disbursed a material portion of that money.

### V. The Wire Communication

24. On June 26, 2012, in the District of Hawaii and elsewhere, for the purpose of executing, and attempting to execute the aforesaid scheme and artifice to defraud, Defendant MARC HUBBARD and others did cause to be transmitted, in interstate commerce, by means of wire communications, certain signs, signals and sounds, that is, the following wire communication: a wire transfer of $200,000 from the State of Hawaii to the State of Florida.

All in violation of Title 18, United States Code, Section 1343.

### Count 2

25. On or about June 26, 2012, in the District of Hawaii, the Defendant SEAN BARRIERO, did unlawfully cause to be transmitted

//
//
//
//
//
//
//
//
//

and transferred in interstate commerce, from Honolulu, Hawaii to Miami Florida, stolen property, that is, $200,000 knowing the same to have been stolen.

All in violation of Title 18, United States Code, Sections 2314 and (2)(b).

Dated: Honolulu, Hawaii, NOV - 7 2012.

A TRUE BILL

/s/ Foreperson
Foreperson, Grand Jury

FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii

/s/ Leslie E. Osborne, Jr.
LESLIE E. OSBORNE, JR.
Chief, Criminal Division

/s/ Leslie E. Osborne, Jr.
LESLIE E. OSBORNE, JR.
Assistant U.S. Attorney

United States v. MARC HUBBARD, et al.
"Indictment"
Cr. No._____